IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CLIFFORD B.,[1] Plaintiff, | ) | |
| v. | ) | Case No. 25-cv-1341-RJD[2] |
| COMMISSIONER of SOCIAL SECURITY, Defendant. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff seeks judicial review of the final agency decision finding that his disability under sections 216(i) and 223(f) of the Social Security Act ended on June 13, 2022.

**Procedural History**

Plaintiff was determined disabled in a decision dated October 13, 2019; for purposes of the instant appeal, that disability determination is the "comparison point decision, or "CPD." Tr. 11, 13. At the time of the CPD, Defendant found that Plaintiff had the following medically determinable impairments: degenerative disc disease, obesity, Crohn's disease, and gastroesophageal reflux disease ("GERD"). Tr. 13. Defendant found that Plaintiff would be absent two days every six weeks for infusion therapy and recovery related to his Crohn's disease. Tr. 13. In a process that started as early as November 2021 (Doc. 276), Plaintiff was evaluated

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties. Doc. 10.

for continuing disability and determined to be no longer disabled since June 13, 2022. Tr. 11, 121. Plaintiff requested a hearing before an ALJ; the hearing was held on November 13, 2023. Tr. 11. The ALJ found that the claimant's disability ended on June 13, 2022 and he did not become disabled again after that date. Tr. 11. Plaintiff requested Appeals Council review. This request was denied, making the ALJ's decision final. Tr. 2. Plaintiff appealed to this Court.

## **Applicable Legal Standards**

To qualify for disability insurance benefits ("DIB"), a claimant must be disabled within the meaning of the applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. A person is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). Once a claimant has been deemed entitled to disability benefits, that entitlement "must be reviewed periodically. 20 C.F.R. § 404.1594(a).

To determine if a claimant continues to be disabled, the ALJ considers the following eight questions:

(1) Is the claimant engaging in substantial gainful activity and has any applicable trial work period been completed?;

(2) Does the claimant have an impairment or combination of impairments which meet or medically equal one of a list of specific impairments enumerated in the regulations?

(3) Has medical improvement occurred? If there is no medical improvement, does one of the exceptions found in paragraphs (d) and (e) of § 404.1594 apply? If there is medical improvement, see step four.

(4) Is the medical improvement related to the ability to work?;

> (5) If the medical improvement is not related to the ability to work, does one of the exceptions found in paragraphs (d) and (e) of § 404.1594 apply?
>
> (6) If the medical improvement is related to the ability to work, are all of the claimant's medical impairments in combination severe?;
>
> (7) Can the claimant perform past relevant work?;
>
> (8) Does other work exist that the claimant can perform?

20 C.F.R. § 404.1594(f).

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir. 2023) (internal citations and quotations omitted). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted). However, the undersigned does not act as a rubber stamp for the Commissioner. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There must be a "logical bridge" between the ALJ's conclusion and the evidence. *Hess v. O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

**The Decision of the ALJ**

The ALJ followed the required eight-step analytical framework. Tr. 11-25. He determined that as of April 19, 2024 (the date of the decision), Plaintiff had not engaged in substantial gainful activity Tr. 13. He determined that since June 13, 2022 (the date Plaintiff's

DIB ended), Plaintiff had the following severe impairments: Crohn's disease, degenerative disc disease in the lumbar spine, obesity, major depressive disorder, and generalized anxiety disorder. Tr. 13. However, he found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the applicable regulations. Tr. 13. Medical improvement occurred by June 13, 2022 related to Plaintiff's nausea. Tr. 16-17. Plaintiff continued to have a severe impairment and combination of impairments, but had the following residual functional capacity:

> [He can] lift up to 10 pounds occasionally. He can stand/walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. He can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to operational control of moving machinery and hazardous machinery. He must avoid unprotected heights. His work is limited to simple and routine tasks. He will miss one work day every 6 weeks for infusions.

Tr. 17, 23. The ALJ determined that Plaintiff could not perform his past relevant work, but jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. 23. Significant to this appeal is the ALJ's finding that Plaintiff will miss one work day every six weeks for infusion therapy; the CPD found that Plaintiff would miss *two* days every six weeks for infusion therapy *and recovery*. Tr. 13.

**<u>The Evidentiary Record</u>**

The following summary of the record is tailored to the ALJ's finding that medical improvement occurred on June 13, 2022 related to Plaintiff's nausea and that Plaintiff would miss one day every six weeks for infusion therapy and recovery (instead of two days every six weeks, as determined in the CPD). Tr. 16.

### 1. Medical records

Plaintiff saw his general practitioner on March 29, 2021 for a yearly physical. Tr. 434. The general practitioner noted that he states "overall he was doing fairly well" but that he had Crohn's disease for which he would continue current care through his gastroenterologist. Tr. 434-35.

Plaintiff saw a gastroenterologist in September 2021. Tr. 443. The gastroenterologist noted that "he is doing ok currently but is overdue for evaluation preferably every six months." Plaintiff was receiving infliximab[3] every six weeks. The gastroenterologist recommended a colonoscopy, which was performed in October 2021. Tr. 448, 450. The report from the procedure contained the following information:

> **Impression**: the examined portion of the ileum was normal. Simple Endoscopic Score for Crohn's disease: 0, mucosal inflammatory changes secondary to Crohn's disease, in remission. Biopsied. Chromoscopy was performed in the entire colon.
>
> **Recommendation**: Continue infliximab 5 mg/kg every 6 weeks. Await pathology results. Repeat colonoscopy in 1-2 year for surveillance.

Tr. 454.

Plaintiff returned to his general practitioner in April 2022 for his annual exam. Tr. 492. He reported that he needed a new gastroenterologist because of insurance issues, and the general practitioner made a referral. Tr. 494.

Plaintiff established care with a new gastroenterology group in August 2022. Tr. 522. He continued to receive Remicade every six weeks and reported that he had previously received

[3] "Remicade (infliximab)…is indicated for reducing signs and symptoms and inducing and maintaining clinical remission in adult patients with moderately to severely active [Crohn's disease]." accessdata.fda.gov (last accessed 9/22/2026).

methotrexate injections that "made him sick with nausea." Tr. 522. Plaintiff reported that he has unpredictable bowel urgency. Tr. 523. He also reported nausea that was sometimes severe. Tr. 523. The nurse practitioner prescribed dicyclomine for fecal urgency and planned to continue his Remicade treatment. Tr. 528.

In 2023, Plaintiff saw his general practitioner for clearance to undergo spinal surgery. Tr. 548. The practitioner noted that Plaintiff continued to receive Remicade and that his "ulcerative colitis" was "fairly stable." Tr. 548, 550. Plaintiff would continue Crohn's disease care with his gastroenterologist. Tr. 550.

**2. Medical Opinions**

At the Agency's request, Dr. Frank Mikell (a cardiologist) and Dr. Calixto Aquino (family or general practice) reviewed Plaintiff's records. Tr. 22. They both opined that "given that the claimant GI studies are normal and show Crohn's is in remission, as well as improvement in reflexes and muscle strength there is medical improvement in the claimant's condition." Tr. 128, 150.

**3. Evidentiary Hearing**

The evidentiary hearing was held on November 13, 2023. Plaintiff testified that having Crohn's disease is "like having food poisoning all the time." Tr. 45. Some days he has "a lot of gut pain" and resulting nausea and dizziness. Tr.45. He is also fatigued "pretty much all the time." Tr. 45. Approximately "once or twice a week", Plaintiff must "be next to a bathroom all the time." Tr. 45. He receives Remicade via infusion every six weeks, a process that takes approximately two-three hours. Tr. 54-55. Remicade makes him nauseous. Tr. 55.

Following Plaintiff's February 2023 back surgery, he still has back pain. Tr. 46. His

doctor told him that some of the pain "will always be there." Tr. 47. Plaintiff can lift "around 20 pounds." Tr. 51. He can stand for approximately 30 minutes and walk "a couple blocks." Tr. 52.

Plaintiff has "mood[] ups and downs [p]robably two to three times a week. Tr. 52-53. His depression worsens when he is in pain. Tr. 55. Around his home, he occasionally does the dishes or laundry; his wife or kids otherwise perform the household chores. Tr. 58.

The ALJ posed the following hypothetical individual to the vocational expert:

> …can lift up to 10 pounds occasionally, lift/carry up to 10 pounds frequently….can stand and walk for about two hours and sit for up to six hours in an eight-hour workday with normal breaks….can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds…can occasionally stoop, kneel, crouch, and crawl….must avoid concentrated exposure to operational control of moving machinery and hazardous machinery…must avoid unprotected heights.

Tr. 61-63. The vocational expert testified that if the individual also needed to alternate sitting or standing positions at 30 minute increments during the workday, he would be "at the sedentary work demand" and could work as an order clerk (65,000 jobs nationally), circuit board screener (90,000 jobs nationally), and optical goods assembler (150,000 jobs nationally). Tr. 62. The individual could only be off-task less than 10% of the work day. Tr. 63. Unscheduled breaks "would have to be a rare and not a daily occurrence." Tr. 64. The individual could be absent "generally not more than once a month but not every month consecutively." Tr. 64. If the individual had to miss work for one day every six weeks, the number of available jobs would be reduced by 30%. Tr. 64.

**<u>Analysis</u>**

The Court agrees with Plaintiff's argument that the ALJ's determination at question #3

(that medical improvement had occurred) was not supported by substantial evidence. To find that Plaintiff had medically improved, the ALJ was required to find improvement in his "symptoms, signs, and/or laboratory findings." 20 C.F.R. § 404.1594(f). The ALJ made the following determinations regarding medical improvement:

> The medical evidence supports a finding that, by June 13, 2022, there had been a decrease in medical severity of the impairments present at the time of the CPD. The records do not support the claimant's allegations that he is nauseous for two weeks after the infusions are given. In addition, the medical records do not support that he would need to be absent two days every two weeks for the infusions. Rather, he discontinued Methotrexate injections which made him nauseous, but he continues the Remicade infusion and reports he is doing well.

Tr. 16.

The Court notes that Plaintiff reported feeling fatigued and nauseous "off and on" for two weeks following an infusion, but otherwise sees no evidence in the records cited by the ALJ that Plaintiff alleged to be nauseous for two weeks continuously following the infusion. Tr. 288. The Court presumes this is a typographical error, as is the ALJ's next sentence that "the medical records do not support that he would need to be absent two days every *two weeks* for the infusions." The CPD included that Plaintiff would miss two days every *six weeks* for infusion therapy and recovery related to his Crohn's disease.

Regardless of the typographical errors, the ALJ's decision does not point to substantial evidence that the severity of Plaintiff's nausea decreased since the CPD. When Plaintiff established care with a new gastroenterology group, he reported that Methotrexate injections made him nauseous. The ALJ apparently interpreted this statement to mean that only Methotrexate injections made him nauseous. The ALJ cannot "cherry-pick" statements that support "a finding

of non-disability" while ignoring statements "that point[] to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotation omitted). At that same visit with the new gastroenterology group, Plaintiff reported current nausea that was sometimes severe. Tr. 523. Moreover, the ALJ cited no records that established when Plaintiff discontinued use of Methotrexate and started taking Remicade; if the ALJ assumed that Plaintiff's nausea ended when he stopped taking Methotrexate, then it seems relevant to establish that Plaintiff was taking Methotrexate (and not Remicade) at the CPD. The ALJ's assumption that Plaintiff's nausea stopped when he started taking Remicade appears to be pure speculation.

The Court acknowledges that Plaintiff's colonoscopy report states that his Crohn's disease was "in remission" in October 2021. Tr. 454. The agency physicians who reviewed Plaintiff's records stated that this finding showed medical improvement. However, the ALJ did not cite these statements as evidence for his finding that Plaintiff had medically improved. Furthermore, the record is silent as to whether the colonoscopy results are evidence that Plaintiff did not have nausea associated with Remicade.

Because the ALJ failed to support his finding at question three with substantial evidence of improvement in Plaintiff's "symptoms, signs, and/or laboratory findings", the Court declines to consider Plaintiff's remaining arguments regarding residual functional capacity and the vocational expert's testimony. The question three finding changes the course of remaining analysis and potentially renders those issues moot. 20 C.F.R. § 404.1594(f)(3).

**Conclusion**

The ALJ failed to support his decision at question three with substantial evidence. After careful review of the record as a whole, the Commissioner's final decision finding that Plaintiff's disability under sections 216(i) and 223(f) of the Social Security Act ended on June 13, 2022 is therefore REVERSED AND REMANDED to the Commissioner for further proceedings consistent with this Order.

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 23, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**